IN THE CASE OF


UNITED STATES, Appellee

v.

Brian P. ADAMS, Specialist
U.S. Army, Appellant

No. 02-0457

Crim. App. No. 20000431

United States Court of Appeals for the Armed Forces

Argued December 10, 2003

Decided April 8, 2004

ERDMANN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain Craig A. Harbaugh (argued); Colonel
Robert D. Teetsel, Lieutenant Colonel Mark Tellitocci, and Major
Allyson G. Lambert (on brief); Lieutenant Colonel E. Allen
Chandler Jr., and Major Jeannette K. Stone.

For Appellee:  Captain Michael D. Wallace (argued); Lieutenant
Colonel Margaret B. Baines, and Major Natalie A. Kolb (on
brief); Major Jennifer H. McGee.

Military Judge:  D. L. Wilkins


**This opinion is subject to editorial correction before final publication**.

Judge ERDMANN delivered the opinion of the Court.

Specialist Brian P. Adams was tried by a military judge sitting as a general court-martial. He was charged with rape and adultery in violation of Articles 120 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 920, 934 (2000), respectively. He entered pleas of not guilty to the adultery charge and guilty to the lesser-included offense of attempted rape in violation of Article 80, UCMJ, 10 U.S.C. § 880 (2000). He was found guilty of both adultery and rape. His adjudged and approved sentence included a bad-conduct discharge, confinement for 14 months, total forfeitures, and reduction to the lowest enlisted grade.

Following the trial, Adams retained a civilian attorney to represent him in the post-trial process. Although the civilian attorney actively represented him before the convening authority, a brief prepared by the civilian counsel for filing with the Army Court of Criminal Appeals was never received by the Army Defense Appellate Division and was never filed. Following a number of continuance requests by a series of assigned military counsel, a "merits" pleading was filed by military counsel with the Army court.

The Army court affirmed Adams' conviction in a per curiam decision and later denied an untimely motion for

reconsideration. Adams petitioned this Court for relief and we

granted review of the following issue:

> WHETHER APPELLANT'S APPELLATE DEFENSE
> COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF
> COUNSEL.

We find that Adams has failed to meet the prejudice

component of the ineffective assistance of counsel test set

forth in Strickland v. Washington, 466 U.S. 668 (1984), and

therefore affirm the Army Court of Criminal Appeals.

BACKGROUND

After his trial Adams retained the services of a civilian

defense counsel, Mr. Cassara, to represent him before the

convening authority. Mr. Cassara submitted matters pursuant to

Rule for Courts-Martial 1105 [R.C.M.] in which he challenged the

military judge's ruling admitting Adams' pretrial statement to

criminal investigators. Despite this effort, the convening

authority approved the adjudged sentence.

Adams' record of trial was subsequently forwarded to the

Army Court of Criminal Appeals for review pursuant to Article

66(c), UCMJ, 10 U.S.C. § 866(c) (2000). Captain Maher was

initially detailed as Adams' appellate defense counsel. Through

discussions with Adams, Captain Maher became aware that Mr.

Cassara would serve as civilian appellate defense counsel before

the Court of Criminal Appeals. See Article 70(d), UCMJ, 10

U.S.C. § 870(d) (2000). Captain Maher communicated with Mr.

Cassara by electronic mail and received a response from Mr. Cassara confirming that he would represent Adams before the Army court. Mr. Cassara did not, however, file any notice of appearance with the Court of Criminal Appeals.

Captain Maher continued to represent Adams until he left active duty and during that time he filed three motions requesting extensions of time in which to file a brief at the Army court. The motions did not indicate that Adams was also represented by civilian counsel. The relationship between the civilian and military counsel at this point was summarized in Adams' appellate brief:[1]

> Apparently Mr. Cassara was still working behind the scenes during this timeframe. According to Mr. Cassara, in May 2001, he researched and drafted an appellate brief for SPC Adams. Mr. Cassara also alleges that he personally discussed the case with CPT Maher in June or July of 2001. Finally, Mr. Cassara remembers either sending or attempting to send a copy of the finished brief to CPT Maher. Supposedly due to a "miscommunication" between civilian and military appellate defense counsel, Mr. Cassara believed that the brief was filed by CPT Maher sometime in June or July of 2001. There is no evidence in the file that it was ever received by the [Defense Appellate Division], nor is there any evidence that the brief was filed with the [Army Court of Criminal Appeals]. Mr. Cassara maintains that he experienced "computer problems" that rendered it impossible for him to be certain that CPT Maher received the brief that he believes he forwarded.

---

[1] The Government accepted the statement of facts set forth in Adams' brief.

When he left active duty, Captain Maher was succeeded by Captain Richardson as Adams' detailed military appellate defense counsel. Captain Richardson apparently did not communicate with either Adams or Mr. Cassara and the extent of his representation consisted of filing three motions for extension of time in which to file a brief.

Captain Richardson was succeeded by Captain Carrier as appellate defense counsel. Captain Carrier did communicate with Adams to discuss the status of the appeal. Following that discussion, in which there was apparently no discussion of civilian representation, Captain Carrier submitted a "merits" pleading on behalf of Adams to the Army court.[2] Although asserting no specific issues, that pleading contained a footnote, pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982)[3], stating:

> Pursuant to U.S. v. Grostefon, 12 M.J. 431 (C.M.A. 1982) and Army Court of Criminal Appeals Rule 15.3(b) appellant asks this Court to consider the issue raised in the Appendix[4] as well as those matters raised to

---

[2] A "Pro Forma" or "Merits" pleading is provided for by Internal Rules of Practice and Procedure, United States Army Court of Criminal Appeals, Rule 15.2. The rule provides for a pleading to be filed "without conceding the legal or factual correctness of the findings of guilty or the sentence . . . which does not assign error[.]"

[3] See id., Rule 15.3, providing that "Grostefon issues shall be brought to the Court's attention by footnote or in an Appendix to the Brief on Behalf of Appellant."

[4] The merits pleading in the original record does not contain an Appendix.

the convening authority pursuant to Rule for Court[s]-Martial 1105.

The matters raised in the R.C.M. 1105 submission to the convening authority included a challenge to the military judge's ruling admitting Adams' pretrial statement to criminal investigators. At this point, however, Captain Carrier was not aware that Mr. Cassara was involved in the case even though he had communicated directly with Adams prior to filing the merits pleading.

The Army court affirmed the trial court's findings and sentence in a per curiam decision. That opinion noted that the court had considered "the issues personally specified by the appellant." United States v. Adams, ARMY 20000431 (A. Ct. Crim. App. January 10, 2002). Thereafter, Adams filed a Petition for Grant of Review that was docketed at this Court on April 10, 2002.

Following the filing of the petition with this Court, Captain Carrier became aware of Mr. Cassara's involvement in Adams' appeal and the fact that a pleading prepared by Mr. Cassara had not been filed at the Army Court of Criminal Appeals. Captain Carrier moved to withdraw the Petition for Grant of Review without prejudice, arguing in the motion that "there are matters that appellant, civilian defense counsel, and military counsel need to address to the Army Court of Criminal Appeals, which cannot exercise jurisdiction if the case is

6

before this Court." Captain Carrier attached to his motion a copy of the brief that Mr. Cassara "intends to submit to the Army Court of Criminal Appeals." We granted the motion to withdraw on May 16, 2002.

Adams then filed a "Motion for Leave to File Out of Time a Request for Reconsideration" with the Army court. The "Request for Reconsideration" attached to the motion to file raised the issue of the admissibility of Adams' pretrial statement. The Army court denied the motion for leave to file out of time.

DISCUSSION

"An accused has the right to effective representation by counsel through the entire period of review following trial, including representation before the Court of Criminal Appeals and our Court by appellate counsel appointed under Article 70, UCMJ, 10 U.S.C. § 870 (2000)." Diaz v. The Judge Advocate General of the Navy, 59 M.J. 34, 37 (C.A.A.F. 2003)(citing United States v. Palenius, 2 M.J. 86 (C.M.A. 1977)). See also United States v. Dorman, 58 M.J. 295, 297 (C.A.A.F. 2003) ("[I]ndividuals accused of crime shall have the assistance of counsel for their defense through completion of their appeal. . . . This right includes the right to the effective assistance of counsel on appeal."); United States v. Knight, 53 M.J. 340, 342 (C.A.A.F. 2000)("[T]he right of a military accused to

7

effective assistance of counsel after his trial is a fundamental right.").

Claims that appellate defense counsel have rendered ineffective assistance are measured by the same test applicable to such claims lodged against a trial defense counsel. United States v. Hullum, 15 M.J. 261, 267 (C.M.A. 1983). Thus, we are guided by the Supreme Court's two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). As applied to the appellate setting, this test places the burden on an appellant to show both deficient performance by appellate defense counsel and prejudice. An appellant meets his burden on deficient performance when he demonstrates that his appellate counsel's performance was so deficient that it fell below an objective standard of reasonableness.[5] Id. at 688.

---

[5] An appellant's burden is heavy because counsel is presumed to have performed in a competent, professional manner. To overcome this presumption, an appellant must show specific defects in counsel's performance that were "unreasonable under prevailing professional norms." United States v. Anderson, 55 M.J. 198, 201 (C.A.A.F. 2001). We apply a three-part test to determine whether an appellant has overcome the presumption of competence:

> 1. Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions . . . ?
>
> 2. If they are true, did the level of advocacy "fall[] measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If ineffective assistance of counsel is found to exist, "is . . . there . . . a reasonable probability that, absent the errors, [there would have been a different result]?"

The burden to show prejudice is met when the appellant shows that appellate "counsel's errors were so serious as to deprive the [appellant] of a fair [appellate proceeding] . . . whose result is reliable." Id. at 687. See United States v. Key, 57 M.J. 246, 249 (C.A.A.F. 2002)(prejudice is not established where there is "no reasonable likelihood" of a different result); see also United States v. Drewell, 55 M.J. 131, 133 (C.A.A.F. 2001); United States v. Christy, 46 M.J. 47, 50 (C.A.A.F. 1997); United States v. Curtis, 44 M.J. 106, 118-19 (C.A.A.F. 1996). We review an appellate defense counsel's effectiveness de novo as a question of law. See Key, 57 M.J. at 249; United States v. Sales, 56 M.J. 255, 258 (C.A.A.F. 2002).

There is, however, no particular order in which the two components must be addressed.

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Strickland, 466 U.S. at 697. See also United States v. McConnell, 55 M.J. 479, 481 (C.A.A.F. 2001).

---

United States v. Polk, 32 M.J. 150, 153 (C.M.A. 1991)(citations omitted). See also United States v. Grigoruk, 56 M.J. 304, 307 (C.A.A.F. 2002).

Assuming without deciding therefore, that civilian defense counsel's failure to file a notice of appearance with the Court of Criminal Appeals, the lack of communication among the various appellate defense counsel and the failure to file civilian counsel's substantive brief before the Army court was deficient performance, we turn to the prejudice component of the test for ineffective assistance.[6]

An appellant has the right to representation before the Army Court of Criminal Appeals by both detailed military and civilian counsel. See Article 70(c)-(d). In such cases, the civilian counsel normally exercises the responsibilities of lead counsel for the defense. See United States v. May, 47 M.J. 478, 481 (C.A.A.F. 1998)(citing United States v. Tavolilla, 17 C.M.A. 395, 38 C.M.R. 193 (1968)). In analyzing Adams' claim of ineffective appellate representation, we do not look at the shortcomings of any single counsel and speculate about the impact of individual errors. Rather, we measure the impact upon the proceedings "by the combined efforts of the defense team as a whole." McConnell, 55 M.J. at 481 (quoting United States v. Boone, 42 M.J. 308, 313 (C.A.A.F. 1995)).

---

[6] The Government conceded in its Final Brief "that civilian appellate defense counsel provided ineffective assistance of counsel in that he failed to ensure that his brief was filed in a timely fashion."

Citing United States v. May, 47 M.J. 478 (C.A.A.F. 1998), Adams argues that prejudice should be assumed in this case because he was effectively deprived of counsel at the appellate level.  In May, the appellant had both military and civilian counsel for his Article 66(c) appeal.  Despite the fact that the Court of Criminal Appeals knew May was represented, no brief of any kind was filed and that court affirmed the findings and sentence without the benefit of briefs.  Addressing those facts, we said, "Where, as in this case, appellate counsel do nothing, an appellant has been effectively deprived of counsel, and prejudice is presumed."  May, 47 M.J. at 481.

Adams, however, was not wholly unrepresented before the Court of Criminal Appeals.  At all times he had detailed military appellate defense counsel who undertook various actions in the case.  The initial military counsel communicated with Mr. Cassara, ascertained that Mr. Cassara would represent Adams before the Army court and thereafter filed several motions for continuance.  The next military counsel did not contact Adams or Mr. Cassara, but did file three motions for continuance. Captain Carrier, the last military defense attorney to represent him before the Army court, communicated with Adams, "carefully examined the record of trial," filed a proper form of pleading at the Army court, and drew the Army court's attention to Adams' personal assertions in a "Grostefon" footnote.  We find that

Adams was not unrepresented before the Court of Criminal Appeals and is therefore not entitled to the presumption of prejudice that would follow when counsel is wholly absent. See id. (citing Penson v. Ohio, 488 U.S. 75, 88 (1988)).

Absent the presumption of prejudice, this record does not support a conclusion that Adams was prejudiced by the absence of Mr. Cassara's brief at the court below. The single issue raised by Mr. Cassara in the "missing" brief and in the brief that was later presented to the Army court as part of the motion for reconsideration concerned the admissibility of Adams' pretrial statement to criminal investigators. At trial, Adams contended that his statement was coerced and involuntary with respect to any admissions concerning penetration. He asserted those particular admissions were inserted into the final statement by the investigators and that he was coerced into adopting them. Adams did not contest the voluntariness of his pretrial statement in any other respect.

After the issue was fully litigated on the record, the military judge found, by a preponderance of the evidence, that Adams' pretrial statements were voluntary. Adams subsequently entered a plea of guilty to the lesser-included offense of attempted rape and acknowledged that he understood he was waiving any objection to his pretrial statement with respect to that lesser-included offense. It is in this context that the

record was presented to the Court of Criminal Appeals for review under Article 66(c), and it is in this context that we have reviewed whether Adams was prejudiced by the absence of the brief prepared by civilian counsel.

While we neither condone the lack of communication between appellate counsel nor derogate the value of a researched brief as an aid to an appellate court, we find that the result would have been no different had Mr. Cassara's brief been properly filed and considered by the Army court. See McConnell, 55 M.J. at 482 (finding no prejudice where the appellant failed to show a "reasonable probability" that a motion not filed would have been meritorious). Several factors lead us to that conclusion.

First, we note that a brief by Mr. Cassara appears in the record both as an attachment to Appellant's motion to withdraw his petition in this Court and as an attachment to his subsequent motion for reconsideration in the Court of Criminal Appeals. The brief raised a single issue of law regarding the admissibility of Appellant's pretrial statement, and did not address the unique responsibilities of the Court of Criminal Appeals under Article 66(c), such as determination of questions of fact or sentence appropriateness. Our Court has discretion to resolve such issues of law at our level or to remand a case for further proceedings at the Court of Criminal Appeals. In the present case, the voluntariness of the pretrial statement

13

was fully litigated and comprised a substantial portion of the record of trial. The brief does not add significant arguments to the matters advanced at trial. Accordingly, we need not return the case to the Court of Criminal Appeals for further consideration of whether counsel's performance was deficient because we conclude that any alleged deficiency by appellate counsel did not deprive Adams of a fair appellate review at the Court of Criminal Appeals. See, e.g., McConnell, 55 M.J. at 481.

Second, we note that a Court of Criminal Appeals is charged by the UCMJ with the responsibility of reviewing the "entire record" and approving "only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact." Article 66(c). The Court of Criminal Appeals was required to independently review the record of trial, including the extensive litigation in the record regarding Appellant's pretrial statement. We do not minimize the role of effective advocacy during Article 66(c) review. Courts of Criminal Appeals, however, are statutorily charged with reviewing the entire record for law and fact, and there is no indication they failed to perform this duty here in reviewing a legal issue that was fully litigated on the record at trial. See United States v. Washington, 57 M.J. 394, 399-400 (C.A.A.F. 2002).

Third, Adams was represented before the Court of Criminal Appeals at all times. Captains Maher, Richardson and Carrier provided uninterrupted representation. Although Captain Carrier was not informed by Appellant or the other counsel of Mr. Cassara's involvement, any deficiency in that regard did not prejudice Appellant, as noted above. With respect to the actions taken by Captain Carrier, we observe that he communicated with his client, thoroughly reviewed the record, filed a pleading on behalf of his client, and complied with Adams' direction to make a personal assertion pursuant to Grostefon.

Fourth, the merits brief specifically directed the Army court's attention to Adams' post-trial submission to the convening authority. That submission was prepared by Mr. Cassara and it specifically challenged the voluntariness of the pretrial statements, stating that the "method by which the alleged confession was garnered" was the "most disturbing" aspect of the case. The "Grostefon" footnote and the Army court's acknowledgement that it considered "the issues personally specified by the appellant," demonstrate that the Army court did in fact review the voluntariness of the pretrial statements.

We do not condone the poor communications and other circumstances that caused the brief by Mr. Cassara to be lost or

15

otherwise misplaced.  Under the circumstances presented in this case, any deficiency in counsel's performance did not prejudice Adams' right to review by the Court of Criminal Appeals under Article 66(c).  We are also confident that had the admissibility of Adams' pretrial statement been presented in the brief prepared by Mr. Cassara, the conclusion of the Army Court of Criminal Appeals would have been no different.  We find that Adams has not sustained his burden of demonstrating that that review was unreliable or unfair and therefore prejudicial.

DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.