# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, ALDYKIEWICZ, and EWING[1]
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major CHRISTIAN R. MARTIN**
**United States Army, Appellant**

ARMY 20160336

Headquarters, Fort Campbell
Steven Walburn, Andrew Glass, and Michael J. Hargis, Military Judges
Colonel Susan K. Arnold, Staff Judge Advocate

For Appellant: William E. Cassara, Esquire (argued); Lieutenant Colonel Christopher D. Carrier, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellee: Captain Joshua Banister, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Wayne H. Williams, JA; Captain Joshua Banister, JA (on brief).

5 March 2019

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

Appellant, an Army Ranger and Master Aviator, beat and strangled his stepson when he was between the ages of twelve and fifteen. Appellant also wrongfully possessed and stored classified information.[2]

---

[1] Judge Ewing decided this case while on active duty.

[2] A panel composed of officer members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of assault consummated by a battery upon a child under the age of sixteen years and two specifications of conduct unbecoming an officer and a gentleman, in violation of Articles 128 and 133, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 928 and 933 (2012). The panel sentenced appellant to a dismissal, confinement for ninety days, forfeiture of all pay and allowances, and a reprimand. The convening authority approved the sentence as adjudged.

Appellant asserts four assigned errors on appeal. None merit relief, however, three merit brief discussion:[3] (1) whether the military judge erred in denying the defense motion to dismiss due to unlawful command influence [UCI] and prosecutorial misconduct; (2) whether the military judge abused his discretion in precluding the defense from eliciting testimony that his wife's children coached each other how to testify; and (3) whether the defense counsel's failures and errors in this case denied appellant the effective assistance of counsel.

## BACKGROUND

*The "Rear Naked Choke"*

Appellant and JH were married from 2004-2014. JH had three children, including her son JEH, from a prior marriage. JEH described himself as "nerdy" and not athletic. In an effort to make JEH "tough," appellant would wrestle JEH which led to two instances where appellant, with no prior warning and to JEH's surprise, strangled JEH. The most severe assault occurred when appellant came up behind his stepson and strangled him by placing his arms around his stepson's neck, in a "rear naked choke," lifting him off the ground, and squeezing his neck until his body went limp and felt numb.

*The Belt and Stick*

On another occasion, appellant reacted to JEH tipping a porta potty at a soccer field. Appellant ordered JEH to clean up the mess and return home afterwards to shower. After JEH showered, appellant beat his stepson with a looped thick leather belt and a bamboo stick on his back, arms, shoulders, and face. The photos of JEH's bruises, in addition to corroborating JEH's account of what happened, document that appellant inflicted significant injury to his stepson.

---

[3] We do not discuss appellant's claim that the evidence is legally and factually insufficient to support the findings of guilt for assault consummated by a battery and for conduct unbecoming an officer and a gentleman. We find the evidence admitted at trial overwhelmingly proves appellant's guilt beyond a reasonable doubt. *See, e.g., United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014); *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011). We have also considered the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit.

**LAW AND DISCUSSION**

*A. Unlawful Command Influence and Prosecutorial Misconduct*

Appellant's claim of prosecutorial misconduct cites to a combination of actions by the Special Victim Prosecutor (SVP) and trial counsel which he asserts were prosecutorial misconduct and resulted in apparent adjudicative UCI. *See United States v. Weasler*, 43 M.J. 15, 17-18 (C.A.A.F. 1995) (distinguishing between UCI in the accusatorial stage and the adjudicative stage of a court-martial).

An appellant claiming apparent UCI on appeal must show "some evidence that unlawful command influence occurred." *United States v. Boyce*, 76 M.J. 242, 249 (C.A.A.F. 2017) (internal quotation marks omitted) (citation omitted). If appellant makes the requisite showing, the burden shifts to appellee to prove beyond a reasonable doubt "that either the predicate facts proffered by appellant do not exist, or the facts as presented do not constitute [UCI]." *Id.* at 249 (citing *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013).

We first address the actions appellant claims amount to prosecutorial misconduct. First, appellant claims the SVP and trial counsel "harassed" and tried to influence the local county prosecutor not to bring charges for bigamy against JH. He bases this claim on the SVP's and trial counsel's frequent e-mails and phone calls to the local prosecutor. We do not find any evidence in the record to support appellant's claim the SVP and trial counsel harassed or tried to influence the local prosecutor. It appears to us that the Army prosecutors diligently prepared appellant's case for trial. In fact, it is recommended that Army prosecutors communicate with prosecutors in other jurisdictions when they have witnesses in common and one prosecution could impact the other. Sharing information between offices is simply not improper. And, in any event, we see no prejudice.

Second, appellant frivolously claims the SVP and trial counsel failed to timely disclose the local prosecutor's personal opinion that JH and JEH lacked credibility. Although the government did not disclose this information to the defense for six months, *it was nevertheless disclosed fifteen months prior to trial*. We are doubtful the professional opinion of another attorney as to the credibility of a witness constituted *Brady* evidence. *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963). We need not decide this issue, however, as appellant cannot point to any prejudice this "delayed" disclosure had on his trial.

Third, appellant claims the trial counsel should have advised members of the Criminal Investigation Command (CID) against searching appellant's residence as part of an illegal "safety check." Consistent with the military judge's finding, we find no evidence that the trial counsel endorsed CID's search. Furthermore, no evidence was seized as part of the search and there was no motion to suppress

3

evidence at trial. We fail to see any link between CID's search and the prosecution of appellant's case.

Fourth, appellant asserts the trial counsel had a prohibited conversation with him, as a represented party, outside the presence of his counsel. This interaction occurred after appellant's "first reading" of his Article 15, when the trial counsel asked appellant if he wished to make an election regarding whether to demand trial by court-martial. Ultimately, appellant turned down the Article 15 and demanded trial by court-martial. Regardless of whether this communication was prohibited or was a ministerial communication, the communication in no way prejudiced appellant.

Accordingly, we find appellant failed to raise "some evidence" of facts that constitute UCI. *See Boyce,* 76 M.J. at 249. Appellant's claims of prosecutorial misconduct are "mere allegation[s]" and "speculation." *Id.* Having found no prosecutorial misconduct in this case, we find that the actions by the trial counsel and SVP in this case did not constitute UCI.

### B.   Children Coaching Each Other How to Testify

Appellant claims the military judge should have allowed two witnesses to testify that they overheard JH's children talking to each other about what their mother, JH, told them to say when they testified at an Emergency Protective Order (EPO) hearing. On appeal, appellant raises a basis for admissibility which was not raised at trial. Appellant contends these two witnesses should have been permitted to testify regarding what they heard the children say to each other pursuant to the hearsay exceptions in Mil. R. Evid. 803(1) and (3) as a present sense impression and then existing state of mind.

We review a military judge's decision to admit or exclude evidence for abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). The theories of admissibility appellant now advances on appeal were never offered to the military judge at trial. It should be needless to say the military judge did not abuse his discretion by failing to intuit and apply appellant's now-proffered theories of admissibility. Further, the theories appellant now advances would have been unavailing even if appellant had offered them at trial. The hearsay exceptions appellant now advances did not apply to the children's conversation about what their mother allegedly told them to say at a civilian court hearing. The children's alleged statements did not describe or explain any then-existing event or condition under Mil. R. Evid. 803(1). Similarly, the children's alleged statements about what their mother allegedly told them did not show the children's then-existing state of mind, much less any state of mind of their mother. *See* Mil. R. Evid. 803(3).

4

### C. *Ineffective Assistance of Counsel*

Appellant asserts his original military defense counsel was ineffective because he notified appellant that he was attending Air Assault School and his schedule was limited to meet with appellant. Appellant released his original military defense counsel on 16 April 2015, *over a year prior to when appellant's case went to trial*. During the pre-trial Article 39(a) sessions, appellant was represented by two civilian defense counsel and a new military defense counsel. Appellant claims one of the civilian defense counsel was ineffective during an Article 39(a) session due to his ill health. That counsel, however, withdrew from representing appellant *five months prior to trial*. At trial, appellant was represented by two civilian defense counsel and one military defense counsel. No member of appellant's actual trial team ever demonstrated any lack of preparedness in representing appellant.

Ineffective assistance of counsel claims are reviewed de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). "To prevail on a claim of ineffective assistance of counsel the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).

Assuming, without deciding, deficient performance on the part of appellant's original military defense counsel and ill civilian counsel, both of whom were released by appellant well before trial on the merits, appellant has failed to show how the alleged deficiencies prejudiced his trial or its outcome. *See, e.g., Captain*, 75 M.J. at 103 ("[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.") (quoting *Strickland*, 466 U.S. at 695). Appellant fails to point to any action or inaction by the two named counsel that resulted in prejudice. Perhaps most telling vis-à-vis the meritless, if not frivolous nature of appellant's claim is that his complaint is silent regarding counsel who actually represented him at trial.

When multiple counsel represent an accused, as occurred in this case, we evaluate the "combined efforts of the defense team as a whole." *United States v. Boone*, 42 M.J. 308, 313 (C.A.A.F. 1995). Despite appellant's asserted deficiencies of individual counsel, the combined efforts of appellant's defense team provided him effective representation at trial. *See, e.g., United States v. Adams*, 59 M.J. 367, 371 (C.A.A.F. 2004) ("We do not look at the shortcomings of any single counsel and speculate about the impact of individual errors.").

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court