# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**First Lieutenant CHRISTOPHER S. SCHLOFF**
**United States Army, Appellant**

ARMY 20150724

Headquarters, 8th Army (convened and action)
Headquarters, Army Combined Arms Center and Fort Leavenworth (*DuBay* Hearing)
Wendy P. Daknis, Military Judge (arraignment)
Mark A. Bridges, Military Judge (motions hearing & trial)
Tiernan P. Dolan, Military Judge (post-trial hearing)
Douglas Watkins, Military Judge (*DuBay* Hearing)
Colonel Marian Amrein, Staff Judge Advocate (pretrial)
Colonel Craig A. Meredith, Staff Judge Advocate (post-trial)

For Appellant:  Captain Ryan T. Yoder, JA; Mr. Philip D. Cave, Esquire (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Mr. Philip D. Cave, Esquire (on reply brief).

For Appellee:  Major Michael E. Korte, JA; Captain Jonathan S. Reiner, JA (on brief).

5 February 2018

---------------------------------
SUMMARY DISPOSITION
---------------------------------

FLEMING, Judge:

In this case, the government has failed to rebut that unlawful command influence (UCI) occurred during the panel's deliberations on findings and it had no prejudicial impact on appellant's court-martial.  As such, we set aside appellant's findings and sentence and authorize a rehearing.

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of abusive sexual contact by touching a stethoscope to the breasts of a noncommissioned officer in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).  The panel acquitted appellant of two specifications alleging the same action in violation of

Article 120, UCMJ, against two other soldiers. The convening authority approved the adjudged sentence of a dismissal.

## BACKGROUND

In the course of our Article 66, UCMJ, review appellant alleged UCI occurred during the panel's deliberations on findings.[1] Appellant's allegations derived from a sworn declaration from a panel member, Lieutenant Colonel (LTC) JV, who asserted "two members argued that politically, the United States Army could not afford to seem weak on sexual harassment and assault" during the panel's deliberations on findings. After reviewing LTC JV's declaration, we found appellant met his burden to produce evidence, if true, which constituted UCI and ordered a hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

Panel membership during deliberations on findings consisted of two colonels, three lieutenant colonels, one major, and one captain. All these members testified at the *DuBay* hearing. Comments by the two senior members of the panel, Colonels (COLs) JW and AM, are the nucleus of this appeal. We adopt the *DuBay* military judge's findings of fact:

> At the beginning of deliberations on findings of appellant's court-martial, the president and senior ranking member of the panel, [COL JW], made a statement to the effect that based on the political climate, the Army could not seem weak or soft in dealing with sexual harassment or assault. He also asked a question to the effect of, 'How does the Chief of Staff of the Army's current emphasis on sexual harassment affect the findings and our decision in this matter?' [COL AM] made some unspecified but similar comments or comments indicating agreement with [COL JW].

> All the members had the ability to hear these statements and all members were engaged in the deliberations. The members debated these comments, with [two of the members] in disagreement with [COLs JW and AM]. The discussion regarded the general climate on sexual assault in the Army and in Korea at the time and

---

[1] We have reviewed appellant's additional issues raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have determined appellant's assertion that the evidence was factually and legally insufficient lacks merit. We need not address appellant's other asserted issue as it is mooted by our decision.

Army policy. [LTC JV] argued that the case should be decided on the merits and that 'the outside' shouldn't be brought into the deliberations, or words to that effect. The members then debated the evidence and voted on findings.

With regard to the comments about the 'climate,' [COL AM], the second senior member, believed the political climate 'was put aside to deal with the facts,' and was not further discussed. However, [LTC JV] stated the debate over the comments resulted in an 'impasse' implying nothing was resolved about the comments. The comments were described variously as 'innuendo,' 'vague,' 'general,' and as 'the elephant in the room.'

## LAW AND DISCUSSION

With respect to UCI, we review a military judge's findings of fact under a clearly erroneous standard but his or her conclusions of law as to the existence of UCI is reviewed de novo. *United States v. Reed*, 65 M.J. 487, 488 (C.A.A.F. 2008) (citing *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A. 1994)). Military members are prohibited from coercing or, by unauthorized means, influencing the actions of any court member in reaching the findings or sentence in a case. UCMJ, art. 37(a). "Use of superior rank or grade by one member of a court to sway other members would constitute unlawful command influence . . ." Mil. R. Evid. 606(b) analysis at A22-54; *United States v. Dugan*, 58 M.J. 253, 260 (C.A.A.F. 2003) (recognizing a panel member can commit UCI by exerting the influence of superior rank on junior members or purporting to "wear the mantle" of command authority during the deliberative process). In the course of addressing allegations of UCI, actual and apparent UCI must be considered. *United States v. Simpson*, 58 M.J. 368, 374 (C.A.A.F. 2003).

As we previously determined, the defense met its initial burden to show some evidence of UCI, which shifted the burden to the government to rebut the presumption beyond a reasonable doubt. *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002) (citing *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)). With respect to actual UCI, the government has three avenues to rebut the presumption, by proving beyond a reasonable doubt:

(1) the predicate facts on which the allegation of unlawful command influence is based do not exist;

(2) the facts presented do not constitute unlawful command influence; or

> (3) the unlawful command influence had no prejudicial
> impact on this particular court-martial.

*Dugan*, 58 M.J. at 259 (citing *Biagase* 50 M.J. at 151); *See also United States v. Boyce*, 76 M.J. 242, 249, n. 6 (C.A.A.F. 2017). With respect to apparent UCI, the third avenue is different as it requires the government to prove beyond a reasonable doubt that "the [UCI] did not place an intolerable strain upon the public's perception of the military justice system and that an objective disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceeding." *Boyce,* 76 M.J. at 249.

Although we have an independent duty to determine the question of UCI de novo, we concur with the *DuBay* military judge that actual and apparent UCI occurred and the government failed to establish "beyond a reasonable doubt that UCI . . . was not improperly brought to bear on any member during the findings phase of [appellant's] court-martial." As correctly noted by the *DuBay* military judge "[COL JW] injected policy and career concerns into the deliberations [and h]e did so despite the military judge's clear guidance that the case be decided solely on the evidence presented in court and the instructions on the law given by the military judge." The UCI was a "palpable cloud throughout the deliberations" left to permeate in each panel member's decision-making process.

Allowing this UCI to hover would prejudicially impact the fairness of appellant's court-marital. We, as did the *DuBay* military judge, cannot find beyond a reasonable doubt that the panel president's comments and the second senior-ranking panel member's comments at the beginning of deliberations had no unlawful and prejudicial impact on one, some, or all of the seven members, particularly the five junior members, and ultimately the outcome of appellant's court-martial. As the *DuBay* military judge aptly stated "it is difficult, if not impossible, for the government to show beyond a reasonable doubt that the 'discussion' in this case had no adverse impact on the appellant's case when inquiry cannot be made into the members' thought processes."[2] Further, a reasonable member of the public fully informed of the facts could harbor a significant doubt about the fairness of the proceedings in the mists of this UCI.

Where the government has failed to meet its burden with respect to UCI, we must fashion an appropriate remedy based on the facts of the specific UCI and the

---

[2] Although dealing with a prior iteration of the rule, our superior court's holding in *Dugan* is binding. The exceptions contained in Mil. R. Evid. 606(b)(2) do not permit circumvention of the prohibition on inquiry into the effect on any member. *See Dugan*, 58 M.J. at 259-60 (citations omitted) ("Members may testify 'with respect to *objective* manifestations of impropriety' but may not testify 'if the alleged transgression is *subjective* in nature.'").

damage to the public perception of fairness. *United States v. Lewis*, 63 M.J. 405, 416 (C.A.A.F. 2006). As long-recognized by our superior court "dismissal is a drastic remedy and courts must look to see whether alternative remedies are available." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004); *see United States v. Riesbeck*, ___ M.J. ___, 2018 CAAF LEXIS 50, at * 26 (C.A.A.F. 2018) (holding dismissal is appropriate if the UCI is "so obvious and so egregious" it adversely impacts "not only Appellant's right to a fair trial by an impartial panel, but also the essential fairness and integrity of the military justice system").

Here, we determine the drastic remedy of dismissal with prejudice is unwarranted. Setting aside the findings and sentence and authorizing a rehearing is the appropriate remedy to eradicate the UCI. The UCI was not "so obvious or so egregious" or of a nature to adversely impact the essential fairness and integrity of the military justice system when it was committed by two panel members in contravention of the military judge's instructions and without government knowledge or ratification. Authorizing a rehearing affords appellant the right to receive a fair trial by an impartial panel.

Despite our holding, we reiterate the protections afforded by Mil. R. Evid. 606(b), lest our opinion be misconstrued as authority emboldening anyone to erroneously disregard the bedrock principle that member's may not reveal "the effect of anything on that member's or another member's vote; or any member's mental processes concerning the finding or sentence."[3]

## CONCLUSION

The findings of guilty and sentence are SET ASIDE. A rehearing may be ordered by the same or a different convening authority.

Senior Judge CAMPANELLA and Judge SALUSSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[3] *See* Mil. R. Evid. 606(b)(1). "[T]he purpose of [Mil. R. Evid. 606(b)] is to protect 'freedom of deliberation,' protect 'the stability and finality of verdicts,' and protect court members 'from annoyance and embarrassment.'" *United States v. Loving*, 41 M.J. 213, 236 (C.A.A.F. 1994) (quoting *United States v. Bishop*, 11 M.J. 7, 9 (C.M.A. 1981) (citing *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915)).