*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Brandon M. HORNE, Staff Sergeant**
United States Air Force, Appellant

**No. 21-0360**
Crim. App. No. 39717

Argued March 1, 2022—Decided May 13, 2022

Military Judge: Mark F. Rosenow

For Appellant: *Captain David L. Bosner* (argued); *Major Ryan S. Crnkovich* (on brief).

For Appellee: *Captain Cortland T. Bobczynski* (argued); *Colonel Naomi P. Dennis*, *Lieutenant Colonel Matthew J. Neil*, and *Mary Ellen Payne*, Esq. (on brief).

Amicus Curiae on behalf of Protect Our Defenders: *Peter Coote*, Esq. (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge HARDY joined. Senior Judge RYAN filed a separate opinion concurring in the judgment.

———————

Judge MAGGS delivered the opinion of the Court.

Prior to the trial in this sexual assault case, a trial counsel and a special victim's counsel (SVC) took actions to dissuade the Air Force Office of Special Investigation (AFOSI) from interviewing a witness whom the trial counsel believed might provide exculpatory evidence. Appellant contends that these actions constituted apparent unlawful command influence in violation of Article 37, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 837 (2012).[1] He therefore asks that we set aside the findings and sentence adjudged by the court-

———

[1] Congress amended Article 37, UCMJ, in 2019, after the events at issue in this case occurred. National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 532(a), 133 Stat. 1198, 1359 (2019). We do not address the amended version of the article in this case.

martial and dismiss with prejudice the sole charge and specification in this case. Focusing on one requirement for granting relief for apparent unlawful command influence, we granted review of the assigned issue of "[w]hether the conduct of the trial counsel and special victim's counsel created an intolerable strain on the public's perception of the military justice system." After a careful consideration of the record and the arguments of the parties, we conclude the Government has demonstrated beyond a reasonable doubt that the answer is no. Accordingly, Appellant is entitled to no relief under our precedents. *See United States v. Boyce*, 76 M.J. 242, 249–50 (C.A.A.F. 2017) (providing the applicable rules regarding apparent unlawful command influence).

## I. Background

In July 2017, while in Germany on temporary duty, Appellant and the victim spent an evening drinking with others on a patio outside the hotel where the victim was staying. At one point during the evening, the victim sent her husband a text message that read: "Falling asleep... I love you babe..[.] text me in the morning." The victim, however, continued to drink with her companions on the patio.

Eventually, the victim returned to her hotel room. Later that night, Appellant knocked on her hotel door, pushed his way into the room, shoved her onto the bed, undressed her, and without her consent penetrated her vagina with his penis. The victim reported the offense the next day and called her husband in the United States and told him what had happened.

An AFOSI agent subsequently made an appointment to interview the victim's husband in October 2017. Before the interview took place, however, the SVC for the victim called the agent. The SVC told the agent that the interview "needed to be cancelled" and that the husband should only be contacted through the SVC.

Around the same time, the SVC also contacted the trial counsel assigned to Appellant's case, and told her that the attempted interview upset the victim and that she was thinking about dropping out of the case altogether. The trial counsel then emailed an AFOSI agent and said that "[f]rom a prosecution standpoint, we do not believe that an [AF]OSI

interview of the husband is necessary nor relevant enough to outweigh the risk of the Victim dropping out of the process entirely." The AFOSI agent replied that contacting the husband was appropriate for them to do and that an interview was within AFOSI's rights, but AFOSI nevertheless acquiesced in trial counsel's request and did not interview the husband.

In January 2018, while the investigation of the victim's allegations was continuing, the SVC assisted the victim in preparing a sworn statement, and the trial counsel provided the SVC with a slide deck as a reference for charging theories. At one point, the victim emailed a draft of the statement to the SVC asking whether it was "what the legal office [was] looking for." In response, the SVC responded with comments, one of which stated: "If you actually felt the penetration of his penis, please do your best to describe it as you detail the situation." The victim subsequently included the following sentence in her sworn statement: "I felt his penis pushing through my vagina." The trial defense counsel, however, specifically told the military judge: "We are not alleging that the statement was materially altered."

In February 2018, the convening authority referred one charge and specification of sexual assault to a general court-martial. In May 2019, Appellant filed a pretrial motion to dismiss the charge and specification with prejudice and to suppress the victim's testimony on the basis of unlawful command influence. Appellant asserted that the SVC and trial counsel had collaborated unlawfully to limit the scope of the AFOSI investigation and to shape the victim's testimony. At this point, the trial counsel and the SVC had been released from their roles as attorneys in this case and were replaced by other counsel.

In May and July 2018, the military judge held hearings under Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2018), on the motion. Shortly before the first hearing session, counsel for both parties interviewed the husband. During the hearings, the victim, her husband, the trial counsel, the SVC, and the AFOSI agents all testified. In addition to the facts described above, evidence emerged that the Air Force uses metrics to encourage the timely processing of cases, that three previous sexual assault trials handled by the trial counsel's office had

resulted in findings of not guilty, and that the trial counsel involved was highly regarded by her superior.

In November 2018, the military judge sent counsel an email briefly announcing that he was denying Appellant's motion to dismiss for unlawful command influence. The trial took place in December 2018. A general court-martial with officer and enlisted members found Appellant guilty, contrary to his plea, of one charge and specification of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (Supp. IV 2013–2017). The court-martial sentenced Appellant to be reduced to grade E-4 and to be dishonorably discharged.

After the trial, in May 2019, the military judge supplemented his email ruling on the motion to dismiss with a lengthy written ruling. Two of the military judge's findings of fact were (1) that an "earlier pretrial interview of [the victim's] husband, by either a representative for the government or any member of the defense, would [not] have developed additional information or information contrary to any made available through access to the witness in May 2018" and (2) that there was no "motive to gain some unfair advantage" on the part of the trial counsel. Consistent with his prior email ruling, the military judge concluded: "The defense has not shown some evidence that [unlawful command influence] occurred. Assuming it has, however, the government has demonstrated beyond a reasonable doubt that the facts as presented do not constitute [unlawful command influence] . . . ."

The convening authority approved the adjudged sentence, and the United States Air Force Court of Criminal Appeals (AFCCA) affirmed. *United States v. Horne*, No. ACM 39717, 2021 CCA LEXIS 261, at \*120, 2021 WL 2181169, at \*39 (A.F. Ct. Crim. App. May 27, 2021). In addressing Appellant's argument that the findings and sentence should be set aside and dismissed because of apparent unlawful command influence, the AFCCA "assume[d] for purposes of [its] analysis that [the] combined actions of [the SVC and trial counsel] may constitute 'some evidence' of the appearance of unlawful influence." *Id.* at \*51, 2021 WL 2181169, at \*17. But the AFCCA then concluded that the Government had shown beyond a reasonable doubt that "the alleged unlawful influence did not place an intolerable strain upon the public's

perception of the military justice system, and that an objective, disinterested, fully informed observer would not harbor a significant doubt about the fairness of Appellant's court-martial." *Id.* at \*56, 2021 WL 2181169, at \*19 (citing *Boyce*, 76 M.J. at 249–50). One judge dissented from the AFCCA's judgment, concluding that the evidence was factually insufficient to prove Appellant's guilt beyond a reasonable doubt. *Id.* at \*120–21, 2021 WL 2181169, at \*39 (Johnson, C.J., dissenting).

## II. Discussion

### A. Standards of Review and Applicable Law

This Court must accept the military judge's findings of fact unless the findings are clearly erroneous. *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002). "A finding of fact is clearly erroneous when there is no evidence to support the finding, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018) (citations omitted) (internal quotation marks omitted). This Court reviews de novo the legal question of whether the facts establish apparent unlawful command influence. *United States v. Bergdahl*, 80 M.J. 230, 234 (C.A.A.F. 2020).

This Court has held that the version of Article 37, UCMJ, applicable to this case prohibits both actual and apparent unlawful command influence. *Boyce*, 76 M.J. at 247–49. In this appeal, however, Appellant alleges only apparent unlawful command influence. In *Bergdahl*, this Court concisely described the multistep process for determining whether apparent unlawful command influence occurred and whether an appellant is entitled to relief. This Court stated:

> To make a prima facie case of apparent unlawful command influence, an accused bears the initial burden of presenting "some evidence" that unlawful command influence occurred. *Boyce*, 76 M.J. at 249 (internal quotation marks omitted) (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)). "This burden on the defense is low, but the evidence presented must consist of more than 'mere allegation or speculation.'" *Id.* (quoting *Salyer*, 72 M.J. at 423).

> Once the accused meets the "some evidence" threshold, the burden shifts to the government to prove beyond a reasonable doubt that either: (a) the "predicate facts proffered by the appellant do not exist," or (b) "the facts as presented do not constitute unlawful command influence." *Id.* (citing *Salyer*, 72 M.J. at 423; *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)). If the government cannot succeed at this step, it must prove beyond a reasonable doubt that the unlawful command influence "did not place an intolerable strain upon the public's perception of the military justice system and that an objective, disinterested observer, fully informed of all the facts and circumstances, would [*not*] harbor a significant doubt about the fairness of the proceeding." *Id.* at 249 (alteration in original) (internal quotation marks omitted) (citation omitted).

*Bergdahl*, 80 M.J. at 234.

In *United States v. Proctor*, 81 M.J. 250 (C.A.A.F. 2021), this Court addressed two recurring issues in apparent unlawful command influence cases. These issues are, first, the relevance of prejudice to the accused, and second, the relevance of ameliorative efforts to address the unlawful command influence. *Id.* at 255. The Court explained: "Unlike actual unlawful command influence, a meritorious claim of the appearance of unlawful command influence does not require prejudice to an accused. . . . Instead, the prejudice is what is done to the 'public's perception of the fairness of the military justice system as a whole.' " *Id.* (quoting *Boyce*, 76 M.J. at 248). But that does not mean that prejudice to the accused is irrelevant. The Court in *Proctor* further stated: "A significant factor in determining whether the unlawful command influence created an intolerable strain on the public's perception of the military justice system is whether the 'appellant was not personally prejudiced by the unlawful command influence, or that the prejudice caused by the unlawful command influence was later cured.' " *Id.* (quoting *Boyce*, 76 M.J. at 248 n.5).

In applying the apparent unlawful command influence doctrine, this Court has not required the parties actually to produce what one court has called "credible evidence that any substantial segment of the general population suffered any

loss of confidence in the military justice system." *United States v. Ashby*, No. NMCCA 200000250, 2007 CCA LEXIS 235, at *96, 2007 WL 1893626, at *31 (N-M. Ct. Crim. App. June 27, 2007), *aff'd* 68 M.J. 108 (C.A.A.F. 2009), *cert. denied* 559 U.S. 940 (2010). Instead, the Court simply has assessed the aggravating and mitigating facts and circumstances and then decided, in its own estimation, whether the Government's conduct "place[d] an intolerable strain upon the public's perception of the military justice system." *Boyce*, 76 M.J. at 249 (internal quotation marks omitted) (citation omitted). Amicus Protect Our Defenders criticizes the objectivity and propriety of this practice, suggesting that the apparent unlawful command influence doctrine in reality may be "simply a cover for a military judge to rule in accordance with his own personal views on the fairness of a court-martial." Whatever the merits of this criticism, we do not consider the issue now because the parties do not challenge our precedent in this case but instead simply disagree about the application of the current doctrine.

## B. Analysis

In this case, the Government makes no effort to dispute that Appellant has made a prima facie case of apparent unlawful command influence. The Government also does not assert that it can prove beyond a reasonable doubt either that the predicate facts do not exist or do not constitute unlawful command influence. Instead, the Government focuses only on the final step in the apparent unlawful command influence analysis described above. Relying on our decision in *Proctor*, 81 M.J. at 257, and consistent with the assigned issue in this case, the Government asserts that this Court can resolve the case "solely based on whether the government has proven beyond a reasonable doubt that the conduct at issue did not place an intolerable strain on the public's perception of the military justice system."

The Government cites five facts and circumstances in support of its position that we consider the most persuasive. The Government asserts: (1) the parties fully litigated the unlawful command influence issue before trial; (2) the trial counsel and SVC were released from their roles in the case before trial; (3) the Government disclosed all written communications related to the alleged unlawful influence; (4)

the military judge found that the trial counsel did not have an intent to gain an advantage; and (5) the military judge found that the actions to discourage the AFOSI investigations ultimately did not cause Appellant any personal prejudice. The Government contends that these and other facts and circumstances establish beyond a reasonable doubt that the conduct of the trial counsel and SVC did not place an intolerable strain on the public's perception of the military justice system.

Appellant disagrees, identifying in its briefs at least fifteen facts and circumstances that Appellant believes prevent the Government from meeting its high burden of proof. The matters cited by Appellant include: (1) the trial counsel's "intentional abandonment of evidence believed to be exculpatory in nature"; (2) the trial counsel's improper "influence over an independent investigative agency"; (3) the involvement of "judge advocates—persons who should know better" in the misconduct; (4) the trial counsel's ceding of the Government's "sovereign authority to the SVC and the named victim to determine which witnesses to interview"; (5) the manner in which the SVC leveraged his role "to become the most influential decision maker in what is statutorily designed to be a commander-driven military justice system"; (6) the "highly politicized climate surrounding sexual assault in the military"; (7) the "significant" role of "Article 120, UCMJ, litigation . . . within the Armed Forces"; (8) the "lack of . . . protections to check prosecutorial overreach" in the military justice system; (9) the "arbitrary [case] processing metrics . . . used to bolster officer performance reports" in the Air Force JAG Corps; (10) the "nominal" remedial actions taken by the Government in response to the misconduct; (11) the dissenting opinion at the AFCCA on the issue of the factual sufficiency of the evidence against Appellant; (12) the "prosecuting legal office's lack of a sexual assault conviction in the two years leading up to Appellant's case" and trial counsel's "involvement in those acquittals"; (13) the improper collaboration of the trial counsel and special victim's counsel "regarding the substance of the named victim's sworn witness statement"; (14) the departure from the norm that "charging decisions are typically made *after* review of the evidence"; and (15) the appearance that the "purpose and timing of the

[military judge's] written ruling primarily served as insulation against appellate scrutiny" Appellant contends that these facts and circumstances taken together establish at least a reasonable doubt about whether the conduct at issue created an "intolerable strain" on the public's perception of the military justice system.

Before assessing the merits of the parties' respective positions, we first commend both parties for advancing specific arguments with respect to the "intolerable strain" element of the apparent unlawful command influence doctrine. Under our precedent, we must consider "all the facts and circumstances" in determining whether apparent unlawful command influence occurred and whether the Appellant is entitled to relief. *Boyce*, 76 M.J. at 249 (internal quotation marks omitted) (citation omitted). Without specific arguments highlighting aggravating and mitigating facts and circumstances, any review of these issues would be very difficult.

Turning to the merits, we agree that some of the facts and circumstances that Appellant has identified would harm the public's perception of the military justice system. Indeed, matters (1) through (5) generally concern a point that the Government itself concedes in its brief, namely, that the efforts of trial counsel and SVC "to discourage law enforcement agents from interviewing [the victim's husband]—an outcry witness—were unwise and inadvisable" because neither side "benefits when [AF]OSI fails to fully investigate a case." We also specifically agree that trial counsel, as a judge advocate, should have known better than to discourage an AFOSI investigation into potentially exculpatory evidence.

We cannot agree, however, that all the facts and circumstances that Appellant has asserted carry much weight. Matters (6) through (9) concern general features of the military justice system that have little if any relevance to the question of whether the conduct of those involved in this case created an intolerable strain on the public's perception of the military justice system. Although matters (10) through (12) are more case-specific, they are marginal in significance. In raising matters (13) and (14), Appellant implies that the victim was improperly influenced when preparing her sworn

statement. But the aggravating force of this suggestion is undercut in our view because trial defense counsel specifically told the military judge: "We are not alleging that the statement was materially altered." Finally, the record provides no basis for the suggestion in matter (15) that the military judge issued his post-trial written ruling on the unlawful command influence issue "primarily . . . as insulation against appellate scrutiny."

Given that at least some of the facts and circumstances that Appellant has cited are validly characterized as prejudicial to the military justice system, the question is then whether the Government has met its burden to establish beyond a reasonable doubt that the conduct of the trial counsel and SVC did not place an intolerable strain on the public's perception of the military justice system. We believe that it has. As the Government asserts, the full litigation of Appellant's allegations before trial reflected well on the military justice system. The litigation showed that the military judge realized the importance of resolving the matter before trial. All the relevant parties—the victim, her husband, the trial counsel, the special victim's counsel, and the AFOSI agents—testified about what happened. The military judge entertained extensive briefing and argument on the question and granted two of Appellant's requested remedies. Fair process of this kind, especially when undertaken in advance of trial, may largely if not completely prevent the appearance of unlawful command influence from placing a strain on the military justice system. In this regard, the present appeal is notably different from *United States v. Riesbeck*, 77 M.J. 154, 159 (C.A.A.F. 2018), where the military judge dismissed an allegation of unlawful command influence, "blithely asserting the issues could be worked out on appeal rather than actually investigating the allegation."

We also agree with the Government that the release of the original trial counsel and the original SVC was a significant—not merely "nominal"—ameliorative measure. Because no one else was responsible for their conduct, their release surely helped the public perception of the military justice system. And while certainly true—in Appellant's words—that judge advocates "should [have] know[n] better," the military judge found as a fact that trial counsel did not have an intent to

gain an advantage. Because the wrongful acts were not coupled with an improper motivation, the public would likely see them more as very regrettable mistakes but nothing worse. Mistakes of this kind may lessen confidence in the military justice system, but in this instance we think that they fall short of creating an intolerable strain.

Finally, the military judge determined that the actions of the trial counsel and the SVC did not cause personal prejudice. Although the investigation was initially delayed, ultimately AFOSI did interview the victim's husband. As explained above, this Court has held that "unlike actual unlawful command influence where prejudice to the accused is required, no such showing is required for a meritorious claim of an appearance of unlawful command influence." *Boyce*, 76 M.J. at 248. But the lack of personal prejudice is still a "significant factor in determining whether the unlawful command influence created an intolerable strain on the public's perception of the military justice system." *Proctor*, 81 M.J. at 255.

Appellant argues that the military judge's finding that Appellant suffered no personal prejudice is clearly erroneous. Appellant contends that memories fade over time and he gives a concrete example. Appellant notes that the husband recalled talking to his wife in March 2018 but did not remember this two months later in May 2018. Appellant states: "This suggests—if he truly forgot anything—the loss of memory occurred between March 2018 and May 2018, directly undermining the military judge's finding that any earlier interview would not have been helpful." Appellant's suggestion and supposition are insufficient to demonstrate that the military judge's finding of fact was clearly erroneous. We can find clear error only when there is "no evidence to support the finding" by the military judge or when, upon reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Criswell*, 78 M.J. at 141 (internal quotation marks omitted) (citation omitted). That is not the case here.

Neither unlawful command influence nor the appearance of unlawful command influence should occur in the military justice system. When it has occurred, the Government may take immediate steps to reduce prejudice to the accused and

to ameliorate the situation.[2] Precisely that occurred here. Accordingly, despite the valid aggravating facts and circumstances that Appellant has emphasized, the Government has convinced us beyond a reasonable doubt that the conduct of the Government ultimately did not create an intolerable strain on the public's perception of the military justice system.

### III. Conclusion

This Court answers the assigned issue in the negative. The judgment of the United States Air Force Court of Criminal Appeals is affirmed.

---

[2] This Court has not held that taking ameliorative efforts is always necessary for proving beyond a reasonable doubt that unlawful command influence did not place an intolerable strain upon the public's perception. *See Bergdahl*, 80 M.J. at 244 (finding that some evidence of unlawful command influence did not place an intolerable strain upon the public's perception even though the government performed no ameliorative efforts). But as the Court indicated in *Proctor*, such efforts may reduce the prejudice to the military justice system. 81 M.J. at 255.

Senior Judge RYAN, concurring in the judgment.

I agree with the majority that there was no prejudice to the accused in this case. I write separately to express my continued opinion that that ends the inquiry with respect to unlawful command influence (UCI). In my view, an appellant must show actual prejudice under Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2012), to prevail on a claim of UCI. *United States v. Boyce*, 76 M.J. 242, 254 (C.A.A.F. 2017) (Ryan, J., dissenting). Congress agrees, and after this Court's opinion in *Boyce*, which found "apparent" UCI while acknowledging there was no prejudice to the accused, *id*. at 250, it amended Article 37, UCMJ, 10 U.S.C § 837, to make even more clear that an appellant must prove actual prejudice to prevail on a claim of UCI. National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 532(a)(2), 133 Stat. 1198, 1359–60 (2019). After the 2019 revisions, Article 37, UCMJ, now states: "No finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section *unless the violation materially prejudices the substantial rights of the accused*." Article 37(c), UCMJ, 10 U.S.C. § 837(c) (2018 & Supp. I 2019–2020) (emphasis added). As two lower courts have already concluded, this revision codified the approach of the dissent in *Boyce*, 76 M.J. at 256 (Ryan, J., dissenting). *See*, *e.g., United States v. Gattis*, 81 M.J. 748, 754–55 (N-M. Ct. Crim. App. 2021) (stating that the revisions to Article 37 "vitiate the prior apparent UCI intolerable strain/disinterested observer" test (internal quotation marks omitted) (citation omitted)); *United States v. Alton*, No. ARMY 20190199, 2021 CCA LEXIS 269, at *13–14 n.5, 2021 WL 2232100, at *5 n.5 (A. Ct. Crim. App. June 2, 2021) (unpublished) (same).

Moreover, the intolerable strain/disinterested observer test this Court strove mightily to clarify in *Boyce*, is a judicially crafted doctrine, wholly unmoored from the text of Article 37, UCMJ, which leads to ludicrous results. *See United States v. Barry*, 78 M.J. 70, 78 (C.A.A.F. 2018) (holding that even *unintentional* apparent UCI is prohibited by Article 37, UCMJ).

While adhering to the precedent of this Court, the majority's opinion perpetuates the myth that the test for apparent UCI can be applied objectively. It is not an objective test. Rather, the "disinterested observer" test has always been "a cover for a military judge to rule in accordance with his own personal views on the fairness of a court-martial." Brief for Protect Our Defenders as Amicus Curiae at 10, *United States v.* Horne, No. 21-0360 (C.A.A.F. Feb. 14, 2022). As Judge Stucky pointed out in his dissent in *Boyce*, "it is difficult to understand

how an objective, disinterested, *fully informed observer*, knowing that there is no *actual* unlawful command influence, 'would harbor a significant doubt about the fairness of the proceedings.' " 76 M.J. at 254 (Stucky, J., dissenting) (second emphasis added) (citation omitted).

Appellant has not shown any evidence of actual prejudice. I respectfully concur in the judgment.