# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, POND, and PARKER
Appellate Military Judges

**UNITED STATES, Appellant**
v.
**Staff Sergeant KAPIL D. DAVIS**
**United States Army, Appellee**

ARMY MISC 20240078

Headquarters, U.S. Army Southern European Task Force, Africa
Charles L. Pritchard, Jr., Military Judge (arraignment)
Matthew S. Fitzgerald, Military Judge (motions)
Colonel James T. Hill, Staff Judge Advocate

For Appellant: Colonel Christopher B. Burgess, JA; Major Timothy R. Emmons, JA (on brief and reply brief).

For Appellee: Lieutenant Colonel Mitchell D. Herniak, JA; Jonathan F. Potter, Esquire; Major Bryan A. Osterhage, JA; Major Justin L. Watkins, JA (on brief).

24 June 2024

---------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
---------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Senior Judge:

On appeal before this court pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [UCMJ], the government asserts the military judge erred when he found unlawful command influence (UCI) and dismissed the case with prejudice. We find after a review of the record that: (1) the military judge's findings of fact are not clearly erroneous (2) the defense failed to satisfy its burden in providing some evidence that unlawful command influence occurred, and (3) the military judge abused his discretion by dismissing the charges and specifications with prejudice.

## BACKGROUND

### *A. Prior to Preferral of Charges*

On 23 June 2022, the alleged victim (AV)—a paralegal who worked in the U.S. Army Southern European Task Force Africa (SETAF-AF) Office of the Staff Judge Advocate (OSJA)—made a report to the Department of the Army Criminal Investigation Division (CID) that her husband, appellee, had committed domestic violence offenses against her in May of 2021 and May of 2022.[1] The AV was assigned to the Allied Forces Southern Europe (AFSOUTH) battalion legal office as a paralegal and was in the same unit as appellee. On 14 October 2022, CID concluded its investigation and briefed appellee's company and battalion commanders. The battalion commander informed CID that he would consult with his Military Justice Advisor, CPT ██ who was also located in the SETAF-AF OSJA. The AV's Special Victim Counsel (SVC) was also briefed on the final investigation.

Several months later, in January 2023, the OSJA provided a non-prosecution memorandum to appellee's company and battalion commanders regarding appellee's case. The Special Victim Prosecutor (SVP) concurred with this recommendation. The non-prosecution memorandum recommended administrative separation in lieu of prosecution and court-martial. Appellee's company and battalion commanders both concurred with the recommendation for administrative separation. Given appellee's time in service, appellee was entitled to an administrative hearing. Appellee's expiration term of service (ETS) was 10 July 2023.

On 9 March 2023, appellee was flagged for a field initiated administrative separation or discharge. Around the same time, Staff Sergeant (SSG) ██ the paralegal assigned to appellee's case to track and brief the command on the status, was ordered by CPT ██ not to have further involvement on the case due to his role as supervisor and rater to the AV.

On 5 April 2023, CID contacted the SETAF-AF OSJA to obtain a status update for appellee's case. The AV, without informing CID that she was the alleged victim in the case, accessed appellee's file and informed CID that appellee was pending administrative separation.

In late May to early June 2023 timeframe, CPT ██ assumed responsibility for military justice actions arising out of AFSOUTH in support of SETAF-AF's OSJA due to CPT ██'s impending permanent change of station (PCS). This responsibility included appellee's case.

---

[1] These allegations serve as the basis for Specifications 1-4 of Charge I.

On or about 6 July 2023, CPT ▮ received a call from the AV's SVC to discuss the status of appellee's case given his impending ETS on 10 July 2023. This prompted CPT ▮ to investigate appellee's case for the first time, as he had not been tracking appellee's action, nor did he know the command's disposition on the case.[2] After realizing appellee's case was not being properly tracked by OSJA, Captain ▮ contacted his counterparts at the SETAF-AF Military Justice Office for a discussion on whether to prefer charges against appellee prior to his ETS on 10 July 2023, which was mere days away.[3] Specifically, CPT ▮ asked the SVP to relook the case and provide an opinion on whether prosecution was an appropriate disposition. Captain ▮ acknowledged preferral was the only way to extend appellee on active duty. The SVP agreed to do so.

Around this same time frame, CPT ▮ called appellee's battalion commander to see if he would "be willing to relook at the evidence and reconsider it." When the battalion commander said he was not willing to do so because it was "too last minute" and he did not "want to do it this way," CPT ▮ replied, "So you're just going to let him ETS?" to which the battalion commander replied, "Yes."[4] Captain ▮ then told the battalion commander that he was going to "talk with some other people and see where we can take this next, because [he] didn't think that was legally the right thing to do." Captain ▮ did not ask the company commander to reconsider his decision.

At approximately 2300 on 6 July 2023, the SVP called CPT ▮, stating, "Yes, I would take [appellee's] case to court-martial" despite having concurred with the non-prosecution memo months earlier.

### B. The Preferral on 7 July 2023

The next morning, on 7 July 2023, CPT ▮ compiled the evidence in appellee's case and took it to the U.S. Army Garrison (USAG) Italy Commander,

---

[2] Captain ▮ also testified during an Article 39(a) session that he did not know the AV was a paralegal in AFSOUTH during this time.

[3] In the days prior to preferral, SSG ▮ testified that he inquired about appellee's case status because appellee needed an out-processing signature from the OSJA. Staff Sergeant ▮ stated that CPT ▮ "wasn't really tracking the case by the time [he] spoke to him."

[4] The statements by the battalion commander are according to CPT ▮'s testimony. The battalion commander was not called to testify.

Colonel (COL) ██ [5], to see if he would like to take it to court-martial. Colonel ██ advised CPT ██ he would review the information. Captain ██ made a follow up appointment for 1300 that afternoon.

At some point that day, the SVP reinterviewed the AV remotely. During that meeting, the SVP told the AV the following:

> The good news is that we are going to prefer charges and take this trial. Even though it's not how it should have happened, it is going to happen. It has been 7 months since I reviewed the evidence and I drafted charges. They are pending preferral right now. Only thing I'm waiting on is talking to you to make sure I have the details correct. I never like to prefer based on just an interview or reading statements. Want[] to make sure that what we have on the charge sheet is what should be on there.

During this same interview, the AV made a new allegation against appellee that he had brandished a knife and threatened her two years prior. The AV had not disclosed this allegation to anyone previously, to include CID. The new allegation serves as the basis for The Specification of Charge II.

Sometime before CPT ██'s 1300 appointment with the USAG Italy Commander, the SVP and CPT ██ discussed how to best prefer charges against appellee. Captain ██ initially thought to have the USAG Italy Commander do it, because "he had not seen the non-pros memo," but the SVP "had the idea to have [MAJ ██] prefer charges instead of Colonel [██]." After deciding this, CPT ██ briefed MAJ ██, an activated reservist serving as the Senior Trial Counsel with the OSJA, so that he could prefer the charges, which would allow the USAG Italy Commander to order the preliminary hearing. Captain ██ then coordinated with appellee's company commander, an officer on assumption of command orders for appellee's company, to have appellee report to the legal office.[6]

This same day, appellee traveled to Vicenza, Italy to complete his out-processing and pick up a copy of his discharge certificate. The only thing left for appellee to do to complete his military service was to board a flight back home to

---

[5] The USAG Italy Commander is also referenced as the brigade commander in the record of trial.

[6] On 7 July 2023, appellee's company commander was on leave in which First Lieutenant (1LT) ██ assumed command in his absence.

4

the United States. Before he could do so, appellee was ordered by the company commander to report to the SETAF-AF legal office. Upon arrival to the legal office, the Senior Trial Counsel preferred charges against appellee with the company commander on the phone to witness the preferral remotely from Naples, Italy.[7] Captain ▮ then scanned the charge sheet and sent it the company commander for his signature.[8]

At Captain ▮'s 1300 appointment with the USAG Italy Commander, he advised him, "Hey, so you don't actually have to do this anymore. You're not going to prefer charges. We have a different pilar." Captain ▮ informed the USAG Italy Commander, "this will hit your desk in a different way down the road" in reference to the USAG Italy commander ordering a preliminary hearing.[9]

After preferral, appellee made several calls to his chain of command, who then emphasized to him "their lack of participation in the preferral action."[10] No transmittals with the recommendations as to disposition were obtained from the company or battalion commander. Appellee's battalion commander did not receive the charge sheet for his signature—the charge sheet was provided to, and signed by, a different commander after appellee was suddenly transferred to another unit to await court-martial.

*C. After Referral*

On 13 November 2023, the government filed a motion to exclude evidence of the AV's alleged fraternization with a junior soldier, with defense filing their reply in opposition on 16 November 2023. In preparation for a hearing on the motion, the

---

[7] Staff Sergeant ▮ was surprised to be put back on appellee's case to participate in the preferral after he was previously ordered not to work on the case due to a perceived conflict of interest.

[8] Captain ▮ testified at the Article 39(a) session that they could not find the signed portion from 1LT ▮ in the mail and "[t]hen after searching for it for some time" they found it in the courthouse a couple of months later.

[9] The USAG Italy Commander did not testify at the Article 39(a) session.

[10] Staff Sergeant ▮ testified that 1LT ▮ and LTC ▮ were surprised about the preferral against appellee and "didn't feel comfortable" with the situation. Staff Sergeant ▮ also testified that the command "made it clear that [the preferral] wasn't coming from them, that it was coming from Major [▮] who was preferring the charges."

military judge discovered the court reporter would be potentially called as a witness for the motion. An Article 39(a) session was unable to take place due to the lack of availability of a substitute court reporter. The military judge also discovered the Special Trial Counsel (STC) prosecuting the case was a named person in the investigation because the allegation was reported to him. This prompted the military judge to request briefing from the parties concerning the potential disqualification of the STC. After considering those briefs, the military judge issued a ruling disqualifying both the STC and CPT ██ from serving as counsel in appellee's case.

In addition to disqualifying counsel from the case, the military judge highlighted that "the forwarding of charges went from the B Company Commander directly to the USAG Commander as the summary court-martial convening authority." The military judge expanded this observation, stating:

> The Court cannot ascertain from this, why the charges were not forwarded to the AFSOUTH commander, who would appear by all the evidence to be an intermediary command authority between, B Company and the USAG-Italy commander. The company commander's own organizational label on the receipt of charges indicates as much (i.e., B. Co. AFSOUTH BN, USNATO BDE).

After noting that the parties had stipulated facts that the command did not participate in the preferral action, the military judge ordered defense to either assert UCI or affirmatively waive it with a suspense date of 28 December 2023.

### D. Motion to Dismiss for UCI

On 28 December 2023, the defense filed a motion to dismiss appellee's case for UCI. On 2 January 2024, the government filed its response. Both parties requested an Article 39(a) session to litigate the motion.

During this Article 39(a) session which took place on 3 January 2024, the government called CPT ██ to testify after the military judge found that defense had provided "some evidence" of UCI to shift the burden to the government. During Captain ██'s testimony he acknowledged that he had lost track of appellee's case and had not become aware of it until 6 July 2023—after the SVC called him inquiring about the status—just days prior to appellee's ETS.

In explaining his actions on 6 and 7 July 2023, CPT ██ testified that he did not brief the company commander regarding his options for the disposition of appellee's case. Captain ██'s testimony also indicated that he did not brief any of the chain of command on the new allegation the AV had asserted against appellee, which was also absent from the non-prosecution memorandum previously provided

to the commanders, as the AV did not disclose the alleged offense until the telephonic interview on 7 July 2023.

When cross-examined by defense counsel, CPT ▮ testified that he wanted to go to a commander who had not reviewed the non-prosecution memorandum "[b]ecause the commander could have an independent assessment as to what to do next." Captain ▮ acknowledged that he did not know whether the battalion commander had relayed any concerns he had with appellee's case to COL ▮. Defense counsel asked CPT ▮ whether he informed COL ▮ that the company and battalion commanders did not want to prefer charges, to which CPT ▮ replied, "I'm sure I did."

In a later colloquy with the military judge, CPT ▮ testified that he did not think 1LT ▮, who was on assumption of command orders at the time, had ever reviewed the non-prosecution memorandum. Captain ▮ acknowledged that he did not request to have the company commander serve as the accuser and preferring authority. Rather, CPT ▮ only briefed 1LT ▮ as to his duty to "ensure that the charges are preferred on the subject and he receives it."[11] When asked whether he briefed the 1LT ▮ that he could be a preferring authority, CPT ▮ testified that he did not. Captain ▮ then stated it was not his practice to provide the non-prosecution memorandum to each level of command because "disposition is withheld to a certain level on different cases." Captain ▮ then stated there was a withholding policy in effect that withheld appellee's case to the battalion commander.[12] Captain ▮ acknowledged that as to appellee's battalion commander, he "did not forward him anything with the preferral of charges on it." Captain ▮ then explained that the weekend after preferral, it was decided that appellee would be transferred to another unit "because of housing issues in Naples."

The government did not call the company commander, the battalion commander, or the USAG Italy Commander to testify at the Article 39(a) session.

---

[11] Captain ▮ initially testified that he considered having the USAG Italy Commander prefer charges because he had not seen the non-prosecution memorandum and could make an "independent" decision—however, CPT ▮ also acknowledged that the acting company commander had also not reviewed the non-prosecution memorandum.

[12] Upon request by the military judge, the government provided a copy of the withholding policy CPT ▮ relied upon in his testimony, which only withheld the imposition of nonjudicial punishment for domestic violence offenses to the Special Court-Martial Convening Authority.

On 5 January 2024, appellee's defense counsel filed a demand for speedy trial pursuant to the Sixth Amendment of the United States Constitution.

*E. The Military Judge's Ruling on Defense Motion to Dismiss for UCI*

On 8 January 2024, the military judge issued his written findings and conclusions for the defense motion to dismiss for UCI pursuant to Article 37, UCMJ. The military judge concluded the defense had met its burden to show some evidence of UCI. This conclusion was based in part on the parties' stipulation that the command had a lack of participation in the preferral action. The military judge also concluded that the findings of fact suggested "that the members of the OSJA, all subject to the UCMJ, were exerting unlawful command influence in their haste to prevent the [appellee] from reaching his ETS date of 10 July 2023." The military judge further highlighted that CPT ███ "was aware that the only method to extend the [appellee] for any disposition was through preferral of charges with an eye towards court-martial."

*1. The Government's Burden*

After finding the defense met their initial burden, the military judge concluded that (1) the facts presented constituted UCI, and (2) the government failed to meet its burden beyond a reasonable doubt that there was no UCI in appellee's case. Specifically, the military judge found "multiple counsel within the OSJA, all subject to the UCMJ, did attempt to influence the action of a court-martial . . . in reaching the findings or sentence in any case and the action of a convening authority with respect to such authority's acts concerning disposition decisions in contravention of RCM 104."[13](emphasis in original).

After highlighting the fact that the trial counsel responsible for appellee's case lost track of the case until he received a call from the AV's SVC, the military judge noted:

> It was not lost on the trial counsel then and it is not lost on the Court in the instant that this last-minute-of-the-eleventh-hour decision was largely rooted in his admitted knowledge that it was the only disposition available on 7 July 2023 that would extend [appellee] beyond his 10 July 2023 ETS.

---

[13] Rule for Courts-Martial [R.C.M.] 104 addresses the prohibitions that constitute unlawful command influence.

8

The military judge concluded that the trial counsel's negligence in failing to process appellee's administrative separation and a desire to rectify that negligence served as the impetus for the preferral of charges.

The military judge highlighted several statements made by the SVP to the AV corroborating that the preferral decision was "not a command-driven decision, but prosecutor driven." The military judge noted that there was nothing in the record to indicate the company commander wanted to participate in the OSJA's last minute preferral of charges, nor was there evidence the company commander "was advised of his options as to disposition of the offense or even had options." The military judge concluded that the government "treated the company commander's authorities and responsibilities incompletely and ministerially." In reference to the battalion commander, the military judge noted that CPT ▉ never informed the battalion commander or law enforcement concerning the new allegation that appellee communicated a threat while brandishing a knife.

In addressing the withholding policy, the military judge observed that it only withheld the authority to impose non-judicial punishment in domestic violence cases, which neither the company nor battalion commander had any intention to pursue. Additionally, the military judge concluded there was no evidence that the Special Court-Martial Convening Authority (SPCMCA) withheld appellee's case at his level.

The military judge concluded his analysis of the government's burden with the following:

> In sum, the usurpation by the counsel of the role of commanders in the preferral and disposition of charges within their authority violates the fundamental principles of a commanders' role in military justice and the role of their legal advisors. The conduct of the members of the OSJA was clearly outcome-determinative to the prosecution's desires and not process-determined to the commander's intent – all in contravention of the Uniform Code of Military Justice and Rules of Court Martial. It denied the company and battalion command of their respective individual authority and prevented the SPCMCA from making an informed decision based on his subordinate commander's recommendations . . . the SPCMCA is the only commander who made a recommendation . . . thereby denying the GCMCA the recommendations of all subordinate commanders.

9

The military judge found the actions and omissions of the prosecutors resulted in a violation of Article 37(d)(2), UCMJ, which prohibits a convening authority or commanding officer from limiting the discretion of their subordinate commanders in cases for which disposition has not been withheld.

### 2. *Material Prejudice Pursuant to Article 37(c), UCMJ*

After finding UCI and concluding the government failed to meet its burden in proving beyond a reasonable doubt that UCI did not exist, the military judge found appellee was materially prejudiced by the actions of the government.

Specifically, the military judge found that appellee was materially prejudiced "by the manifold acts by the Government that constitute unlawful command influence at each echelon of command." In support of this holding, the military judged noted that both the company and battalion commander were "usurped" by the prosecutors from: (1) being informed of a previously unknown and unreported criminal allegation; (2) receiving the charges; and (3) making a disposition decision including forwarding the charges to the next higher commander with a recommendation as to disposition. Additionally, the military judge found the USAG Italy Commander was usurped from fulfilling his proper role to be informed of the subordinate commanders' recommendations as to disposition prior to acting on the charges or forwarding all recommendations to the General Court-Martial Convening Authority (GCMCA). Lastly, the military judge concluded that the GCMCA was prevented from being informed of the recommendations of all of appellee's subordinate commanders prior to making a referral decision in the case. The military judge concluded:

> The accused has a right to a trial that arrived free of the specter and taint of anyone exerting unlawful and unauthorized influence through actions and omissions that thwart the regular order of our time-tested method of bringing an Accused to trial by court-martial. When it is the prosecutors who engage in such acts or omissions and do so with the clear intent to cover up and mollify certain pressure on them borne from their own shortcomings, then the accused has materially lost the due process – it being a substantial right – he is entitled to and the law requires.

Having found material prejudice, the military judge moved onto his analysis for the appropriate remedy.

### 3. *The Remedy for UCI in Appellee's Case*

The military judge held that the finding of UCI warranted dismissal in appellee's case, as the government's actions did not constitute harmless error. In considering with and without prejudice, the military judge concluded that "dismissal without prejudice is a remedy without meaning" and "would reward the government for failing to . . . maintain oversight and timely process actions and accurately and timely advise commanders without usurping their authorities." (emphasis in original). The military judge noted that appellee had been "in limbo for well over a year with an eleven-year career sidelined, an HQDA-select promotion removed, and [had] been dispossessed of his household goods and personal effects."

The military judge stated that significant delay would occur should the case be dismissed without prejudice, due to a new prosecutorial team likely having to review the case prior to advising a new command team, as well as a new OSJA to handle the actions in the case. The military judge concluded that "the Court cannot ignore the fact that the Accused has a right to, and in fact [h]as demanded, speedy trial" and that giving the government another chance to try the charges anew would delay appellee's case even more.

The military judge then granted the defense motion to dismiss due to UCI with prejudice.

## LAW AND DISCUSSION

In an Article 62, UCMJ, appeal, we review the evidence in the light most favorable to the prevailing party. *United States v. Pugh*, 77 M.J. 1, 2 (C.A.A.F. 2017). When reviewing interlocutory appeals, this court "may act only with respect to matters of law," and may not "find its own facts or substitute its own interpretation of the facts." UCMJ art. 62(b); *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007); *see also United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004). We are bound by the military judge's factual determinations unless clearly erroneous. *Gilmet*, 83 M.J. at 403 (citing *United States v. Proctor*, 81 M.J. 250, 255 (C.A.A.F. 2021)) (citation omitted). But the issue of unlawful command influence arising from those facts is a question of law we review de novo. *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018) (citation omitted); *see also Gilmet*, 83 M.J. at 403.

The government argues that the military judge erred when he found UCI because (1) the military judge ignored material facts and made clearly erroneous findings of fact, and (2) the miliary judge misapplied the law. Appellant further

argues that even if there was actual UCI, the military judge abused his discretion when he ruled the remedy would be dismissal with prejudice.[14] We address each argument below.

### A. Findings of Fact

The government highlights three findings of facts they argue are clearly erroneous. We will address each in turn.

The first fact the government asserts is clearly erroneous concerns the military judge's finding that CPT ▇ took over all AFSOUTH legal actions in April 2023. The government points to CPT ▇'s testimony that his transition with CPT ▇ did not begin until "the end of May, beginning of June." While it appears the evidence supports a finding of CPT ▇ assuming responsibility over AFSOUTH legal actions in May as opposed to April 2023, we find the one-month difference is not case dispositive. The finding of facts correctly reflect CPT ▇ was the counsel responsible for appellee's case during the pertinent disposition decisions and preferral in this case.

The second fact the government argues is clearly erroneous is the military judge's finding that "CPT [▇] testified that he did not seek to have either the company commander or battalion commander prefer the charges as accuser and did not advise them about preferring charges, because he was aware of where they stood based on the January non-prosecution memorandum and the accepted disposition advice they received at the time." While we agree this specific finding regarding CPT ▇'s *reasons* for not seeking the company commander as an accuser may not be supported by the evidence, we again do not find this specific finding of fact to be dispositive. Captain ▇'s own testimony *does* show that CPT ▇ chose not to brief the company commander that he could be a preferring authority because the OSJA "didn't need him to be the preferring authority." The evidence fully supports the above finding of fact regarding the battalion commander, as CPT ▇ testified that he

---

[14] Appellant also argues there was no good cause for appellee's "untimely UCI motion" and asks this court to vacate the military judge's ruling. As this argument was not raised by the government at trial, the government cannot ask this court to now consider new facts and new arguments not presented to the military judge at trial and we decline to do so. *See United States v. Gilmet*, 83 M.J. 398, 408 (C.A.A.F. 2023) ("We decline to entertain the Government's untimely argument in this appeal."); *see also United States v. Muwwakkil*, 74 M.J. 187, 191-92 (C.A.A.F. 2015) (declining to entertain the government's untimely argument that it failed to raise with the military judge and Court of Criminal Appeals); *Giordenello v. United States*, 357 U.S. 480, 488 (1958) (refusing to entertain the government's "belated contentions" that it failed to raise in the lower courts).

did not advise the battalion commander to prefer charges "because [he] wasn't going to advise him to do something that he wasn't willing to change his mind on."

Finally, the government argues that the military judge's finding that "there is no evidence presented as to how that transfer was conducted, when it was done, at whose order it was done, or why it was done" and "no evidence was presented as to why reassignment was necessary based on the Accused's preferral of charges or extending him beyond his [ETS]" was clearly erroneous. We disagree. Although CPT ▮ provided speculation as to why appellee was transferred right after preferral, the government failed to provide any paperwork or testimony from personnel support officer or the command team. As such, this finding of fact was a reasonable inference that could be drawn from the evidence presented, or lack thereof, and is not clearly erroneous.

*B. Unlawful Command Influence*

Article 37(a), UCMJ, prohibits unlawful command influence, which states the following:

> No person subject to this chapter may attempt to coerce or, by any unauthorized means, attempt to influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority or preliminary hearing officer with respect to such acts taken pursuant to this chapter as prescribed by the President.

UCMJ art. 37(a)(3).

Unlawful command influence "is the mortal enemy of military justice." *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986). In order to "establish a prima facie claim of actual UCI, the accused bears the burden of presenting 'some evidence' of UCI—facts that if true, would constitute UCI." *Gilmet*, 83 M.J. at 403 (quoting *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999)) (cleaned up). A showing of some evidence is met if appellee can establish: "(1) facts, which if true, constitute unlawful influence; (2) unfairness in the court-martial proceedings (i.e., prejudice to the accused); and (3) that the unlawful influence caused that unfairness." *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018) (citing *United States v. Boyce*, 76 M.J. 242, 248 (C.A.A.F. 2017)) (citations omitted). "Although this initial burden is low, the accused must present more than mere allegations or speculation." *Gilmet*, 83 M.J. at 403 (cleaned up).

13

There are two types of unlawful command influence. The first type is accusatory unlawful command influence in which it is alleged that there was unlawful influence in the preferral, forwarding, or referral of charges. *United States v. Givens*, 82 M.J. 211, 215 (C.A.A.F. 2022) (citing *United States v. Weasler*, 43 M.J. 15, 17-18 (C.A.A.F. 1995)). The second type is adjudicative unlawful command influence in which it is alleged there was interference with witnesses, judges, panel members, or counsel. *Id.* Appellee claimed unlawful command influence in the context of the forwarding of the charges, therefore, he asserted a claim of accusatory unlawful command influence.

As noted by the military judge, historically there have been two types of unlawful command influence: actual unlawful command influence and the appearance of unlawful command influence. *United States v. Boyce*, 76 M.J. 242, 247 (C.A.A.F. 2017). While appellee alleged both actual and apparent unlawful command influence, the military judge only addressed actual unlawful command influence in his ruling recognizing the changes to Article 37, UCMJ, in recent years. In 2020, Congress amended Article 37, UCMJ. *See* National Defense Act for Fiscal Year 2020, Pub. L. No. 116-92, §532, 133 Stat. 1359-61 (2019). The amendments were effective at the time of preferral of appellee's case. The amendment of Article 37(c), UCMJ, is the one at issue and states "[n]o finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section unless the violation materially prejudices the substantial rights of the accused." Noting this statutory change, the military judge relied upon dicta in a decision issued by this court as to whether the change in the language of Article 37, UCMJ, eliminated apparent unlawful command influence. *See United States v. Garrett*, ARMY 20210298, 2022 CCA LEXIS 638 (Army Ct. Crim. App. 21 Oct. 2022) (mem. op.). Given that we review the issue of unlawful command influence de novo, we are not bound by the military judge's conclusion that apparent UCI no longer exists. However, we agree that by premising relief on a demonstration of material prejudice to a substantial right, Congress appears to have eliminated apparent unlawful command influence as a potential course of relief. As such, we will only address whether actual UCI occurred in this case.

*1. Some Evidence*

The government argues that appellee failed to meet his initial burden of providing some evidence that UCI occurred because the stipulated facts by the parties, the testimony of SSG ▮ where he stated the command was surprised about preferral, and the military judge's conclusion that the "only method to extend the Accused for any disposition was through a preferral of charges with an eye towards court-martial" did not on their face constitute evidence of UCI. We agree with the government that the defense failed to meet its low burden to show facts, which if true, constitute unlawful command influence.

14

We acknowledge that the initial burden is low to show "some evidence." But the burden is not just to show "some evidence" but "some evidence" of unlawful command influence. Unlawful command influence is defined as an "attempt to coerce, or, by any unauthorized means, attempt to influence the action of a court-martial" or "the action of any convening, approving, or reviewing authority." UCMJ art. 37(a)(3). Here, the actions by the prosecution amounted to neither an attempt to coerce or *by any unauthorized means*, an attempt to influence the action of the SPCMCA, COL█.

The amendments to Article 37 reflect a Congressional intent for UCI to be intentional rather than unintentional. *Compare United States v. Barry*, 78 M.J. 70, 78 (C.A.A.F. 2018).[15] Thus, negligent acts would be insufficient to meet the intent required by Article 37, UCMJ. Consequently, any negligence on the part of the government in failing to initiate an administrative separation of appellee is irrelevant to the issue of UCI here. The focus of the analysis should be on the deliberate, intentional acts of the prosecution to influence the proceedings, to include their preferral of charges, and the transmittal of the charge sheet directly to COL █ without first going to the company or battalion commander.

The acts by the government prosecutors do not reflect an attempt to coerce the SPCMCA as to his disposition decision or an attempt to influence the actions of the SPCMCA, COL█ *by unauthorized means*. First, any person subject to the UCMJ may prefer charges and there is no requirement to first seek approval from any commander. *See* R.C.M. 307 ("Any person subject to the UCMJ may prefer charges."). This has long been a part of our military practice, the only difference being that instead of limiting it to only officers, now any person subject to the UCMJ may prefer charges. *See* William Winthrop, *Military Law and Precedents* 153 (2d ed., Government Printing Office 1920) (1896) ("Any officer, of whatever rank, and whether or not exercising command, may legally prefer a charge, and at any time.") While Colonel Winthrop notes that in general, charges are most appropriately preferred by or at the direction of the accused's commander, that

---

[15] In *Barry*, the court held that the plain language of a prior version of Article 37 did not require an intentional act where the syntax "attempt to coerce or, by unauthorized means, influence the action" demonstrated that "attempt to" only applied to the verb "coerce" and not the verb "influence" and thus, an "attempt to coerce" necessarily required intent whereas influencing an action by unauthorized means" violated the statute "regardless of intent." *Barry*, 78 M.J. at 78-79. Congress subsequently amended Article 37 to also include the words "attempt to" immediately before the words "influence the action." *See* National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, §532, 133 Stat. 1198, 1359-60 (2019).

"[t]here is no military status which involves a legal disqualification to prefer a charge; an officer, though himself under charges, in arrest, or under sentence, may not only originate but formally prefer charges with the same legal effect as any other officer." *Id.* A junior officer may even bring charges against a senior in rank, though not encouraged "unless ordered to be preferred, or sanctioned, by a common superior" but "peculiar circumstances will sometimes justify them." *Id.* at 153-54.

While R.C.M. 307—a reflection of our military practice and precedent—allows anyone to prefer, R.C.M. 401 specifically limits who may *dispose* of charges. Therefore, preferring charges and disposing of charges are two different things. And there is no evidence that CPT ▮ or anyone from the OSJA did anything with the charges other than prefer them, request the company commander serve them on appellee as required by R.C.M. 308, and bring them to COL ▮ for disposition. Thus, the rules do not prohibit the act of preferring charges in this case but appear to authorize it. Consequently, the trial counsel's actions in preferring charges without first obtaining approval from one of appellee's commanders does not constitute unlawful command influence under the new Article 37, UCMJ.

Thus, the next question is whether the prosecution's actions in bypassing the company and battalion commander and taking the preferred charges directly to the SPCMCA, COL ▮, constitutes UCI. Rule for Courts-Martial 306 states "[e]ach commander has discretion to dispose of offenses by members of that command." R.C.M. 306(a). In other words, each commander has independent disposition authority. Additionally, a trial counsel may certainly advise a commander to withhold disposition to his or her level in a particular case, regardless of the existence of a written policy memorandum. *See* 10 U.S.C. § 837(d)(1) ("A superior convening authority or commanding officer may withhold the authority of a subordinate convening authority or officer to dispose of offenses *in individual cases*, types of cases, or generally") (emphasis added); *see also* R.C.M. 401(a) ("A superior competent authority may withhold the authority of a subordinate to dispose of charges *in individual cases*, types of cases, or generally.") (emphasis added). Colonel ▮ possessed his own independent discretion to dispose of offenses by members within his command, despite LTC ▮'s previous disposition decision. *See* R.C.M. 306(a); R.C.M. 306(a) discussion ("A decision by a commander ordinarily does not bar a different disposition by a superior authority."). Thus, there is nothing *unauthorized* in the trial counsel here advising COL ▮ to exercise his independent disposition authority in this individual case.

Moreover, the nature of the offenses belies an intent to *improperly* manipulate the criminal justice process by taking the charges directly to COL ▮. These were not minor offenses. The charges include four specifications of domestic violence, three of which involved strangulation, and one specification of communicating a threat. Moreover, there is nothing improper in advising a commander to exercise his

or her disposition authority where the immediate subordinate commander has declined to reconsider the evidence.

And when a superior commander takes action to dispose of offenses there is no requirement for that commander to obtain recommendations from subordinate commanders before doing so. *See* R.C.M. 401-404.[16] Pursuant to R.C.M. 306, COL ■ had his own independent authority to dispose of the offenses of this case after receiving the preferral packet that contained the evidence of appellee's alleged criminal conduct. Thus, there was nothing unauthorized about the means trial counsel employed in taking the charges directly to COL ■ for his decision. *Compare United States v. Salyer*, 72 M.J. 415, 426-27 (C.A.A.F. 2013) (finding accessing a military judge's official personnel file to verify rumors regarding his family to test or validate the impartiality of a military judge was not a method sanctioned by the UCMJ and constituted evidence of UCI).

There is also no factual finding that CPT ■ improperly advised COL ■ or coerced him into making his recommendation. *Compare United States v. Barry*, 78 M.J. 70, 75 (C.A.A.F. 2018) (finding GCMCA was advised "'not to put a target on his back'" in deciding whether to approve or disapprove the findings and sentence). As discussed, there was no requirement to obtain chain of command recommendations. Nor does there appear to be any finding that the prosecution somehow improperly influenced the investigation of the offenses. In fact, the military judge disagreed with the defense's principal argument that the AV's unfettered access to the prosecution's case constituted UCI. *Compare United States v. Horne*, 82 M.J. 283, 284-90 (C.A.A.F. 2022) (where the trial counsel discouraged law enforcement agents from interviewing an outcry witness and investigating potentially exculpatory evidence). And while the SVP may have prematurely and inaccurately informed the AV that a disposition had already been made, there is no evidence that this conversation was relayed to COL ■. Some of the facts surrounding the loss of appellee's case are troubling, but as those may be, the facts relevant to the issue of UCI only show a trial counsel providing legal advice at the eleventh hour to his client, the SPCMCA, COL ■, on the disposition of the charged offenses and do not constitute UCI.[17]

---

[16] The discussion to Rule 401 references sending or returning charges to a subordinate commander for compliance with procedural requirements, such as notifying an accused of charged or conducting a preliminary inquiry, if required. R.C.M. 401(2)(B) discussion.

[17] Of note, had appellee allegedly committed these offenses eighteen months later, the commanders would not have had disposition authority of these offenses, which are now considered covered offenses under the disposition authority of the Office of

(continued . . .)

17

Additionally, even if UCI could be imputed, arguendo, to the SPCMCA, the GCMCA received his own independent Article 34, UCMJ, legal advice from his Staff Judge Advocate regarding the disposition of charges. The military judge's factual findings referenced the GCMCA's Article 34, UCMJ, advice. This case was referred to trial by a superior level of command who received independent legal advice by his Staff Judge Advocate (SJA) as to disposition. *See United States v. Johnston*, 39 M.J. 242, 243-45 (C.M.A. 1994) (holding that even if the trial counsel coerced the accuser into preferring charges, those actions could only be imputed to the SPCMCA and since the case was convened by a superior level of command, who acted independently with the advice of his own SJA, there was not enough evidence to support the defense's low burden of proof to justify further inquiry of UCI.)

## 2. No Prejudice

Assuming, however, the defense satisfied its low burden, and the government failed to dispel the UCI beyond a reasonable doubt, we also find no material prejudice to a substantial right of appellee.

As noted by the government, the relevant inquiry on the issue of whether appellee suffered prejudice is whether there is a reasonable probability a different convening authority would have made a different decision in this case. *Boyce*, 76 M.J. at 250. There is not. First, as for the SPCMCA, there is no evidence that another SPCMCA would have simply dismissed appellee's charges outright, even with two subordinate commanders previously deciding to dispose of the offenses through administrative separation. As previously noted, appellee is accused of serious domestic violence offenses. Any SPCMCA likely would have conducted an Article 32, UCMJ, preliminary hearing to determine whether there was probable cause to support the charged offenses before making a disposition decision. This process provides a SPCMCA an independent assessment whether there is probable cause to support the charged offenses and a disposition decision. In this case, the preliminary hearing officer concluded there was probable cause to believe appellee committed the charged offenses and recommended trial by court-martial. Second, the convening authority applies a reasonable grounds standard in determining whether to refer charges to a general court-martial. R.C.M. 601(d)(1); *see also Boyce*, 76 M.J. at 250. Given the nature of the offenses in this case, the recommendation by the preliminary hearing officer, and the recommendation by the

---

(. . . continued)
Special Trial Counsel. *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81 §§ 531-539C, 135 Stat. 1541, 1692-99 (2021).

USAG Italy Commander[18] and SJA to refer the case to a court-martial, we find there is no reasonable likelihood that a different convening authority would have made a different referral decision. Accordingly, appellee has failed to demonstrate prejudice.

### 3. The Government's Negligence

While we do not find that the government's actions in this case amounted to UCI, we concur with the military judge that the government in this case was forced to act with haste in appellee's case in order to "correct [its] errors of neglect, omission, and inaction wholly of [its] . . . own making" which appeared to occur at every turn.

Not only did the command's direct legal advisor lose track of appellee's case but the SVP, a judge advocate selected to serve as a subject-matter expert with more experience and provide oversight of certain offenses, took part in recommending administrative separation but then failed to provide any oversight as to the completion of that disposition. By the SVP's own admission, appellee's case was not properly monitored when he informed the AV "[t]he good news is that we are going to prefer charges and take this to trial. Even though that's not how it should have happened, it is going to happen." The mishandling of appellee's case resulted in judge advocates resorting to requesting that another judge advocate review the investigative file and serve as an accuser due to appellee's impending discharge from service. While lawful, these actions are highly unusual and we do not condone them in what has historically been a command-based military justice system.

Even more concerning in this case is the fact that the AV continued to have access to an electronic copy of the investigative file for several months with no oversight by judge advocates resulting in her accessing the file on more than one occasion. This lack of oversight resulted in the AV providing a status update to CID about the disposition of appellee's case. We wholly agree with the military judge that "[t]he lack of oversight as to AV's access and AV's lack of professional restraint in exercising access are troubling." At no point in any criminal investigation should a victim, paralegal or not, have access to the entire law enforcement file while the case is pending disposition. Restricting access to the prosecutor's copy of an investigative file rests solely with the judge advocate handling the case.

---

[18] Although the SPCMCA is the USAG Italy Commander, the Article 34 advice references him as the "Brigade Commander."

At best, the acts and omissions by multiple judge advocates involved in this case are negligent and at worst amount to dereliction.

*C. The Military Judge's Remedy*

We review the military judge's remedy of dismissal with prejudice for an abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004). This standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *Id.* And this court will not set aside such a discretionary action "'unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993)) (citation omitted).

Even assuming there was actual UCI in appellee's case, we find the military judge abused his discretion in dismissing the case with prejudice. While dismissal with prejudice is a remedy within the military judge's range of appropriate choices, in concluding that it was the appropriate remedy here, the military judge incorrectly applied legal principles. *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (stating using incorrect legal principles, applying correct legal principles unreasonably, or failing to consider important facts can be an abuse of discretion).

Our superior court, in looking at dismissal as a remedy for UCI, has emphasized that it is a "'drastic remedy'" which may be considered as a "last resort" when it is "'necessary to avoid prejudice against the accused.'" *United States v. Douglas*, 68 M.J. 349, 354-55 (C.A.A.F. 2010) (quoting *Gore*, 60 M.J. at 187). Dismissal is "appropriate when an accused would be prejudiced or no useful purpose would be served by continuing the proceedings." *Gore*, 60 M.J. at 187 (citations omitted). But "courts must look to see whether alternative remedies are available" and if "an error can be rendered harmless, dismissal is not an appropriate remedy." *Id.* (citation omitted).

Here, the military judge incorrectly determined dismissal *with* prejudice was appropriate for several reasons. First, his determination that a less drastic remedy would be insufficient is heavily weighted on negligent actions by the government and the effect of those negligent actions rather than any intentional act of "usurping" command disposition authority. For instance, the military judge stated a less drastic remedy would reward the government's failure to maintain oversight and timely process actions and its failure to accurately and timely advise commanders. And it would allow the government to restart the process giving them time they wasted due to their own actions and omissions.

Second, the prejudice the military judge used to craft an appropriate remedy are circumstances born of the government's failure to maintain oversight of

appellee's case as opposed to prejudice to appellee's right to due process. The military judge highlights circumstances such as appellee being in limbo for over a year, having his career sidelined, having his promotion stalled, being dispossessed of his household goods, and being subjected to further delay if the case were dismissed without prejudice. This conclusion is problematic for several reasons. It relies on the government's negligence, not the intentional acts by the prosecution to coerce or unlawfully influence the disposition decisions or the proceedings. Additionally, many of the circumstances mentioned here are administrative consequences experienced by many accused pending court-martial. They *might* be relevant to a speedy trial issue, but we do not see their relevance in fashioning a remedy to cure the alleged unlawful command influence in this case.

Third, the military judge states a lesser remedy would reward the government for usurping the command authorities. Because we conclude the trial counsels' actions did not usurp anyone's authority, we find this was an erroneous conclusion. Even assuming the government's actions did usurp that authority, dismissing with prejudice so as not to reward the government is not tailoring the remedy to cure the harm, which is procedural at most. Cases in which dismissal with prejudice have been upheld often involve prejudicial impact to an accused's right to a fair trial or impartial panel which are substantive due process rights as opposed to procedural ones. *Compare Gilmet*, 83 M.J. 398 (dismissal with prejudice where actions interfered with the attorney-client relationship);[19] *Gore*, 60 M.J. 178, 189 (affirming dismissal with prejudice where the convening authority ordered a senior enlisted chief petty officer not to testify and may have deterred others from testifying on behalf of the appellant); *United States v. Harvey*, 64 M.J. 13, 21-25 (C.A.A.F. 2006) (dismissing without prejudice where convening authority's presence at the court-martial raised concerns about the impartiality of the panel members). Thus, we find the military judge abused his discretion in using incorrect legal principles and applying correct legal principles unreasonably.

Under the lens of UCI, the actions here appear to amount at most to a procedural defect. Yet, the military judge's ruling indicates he was more intent on punishing the government for their *negligent* actions in losing track of appellee's administrative separation and then preferring charges against him at the 11th hour than tailoring a remedy which would cure any actual UCI. The new Article 37 language would strongly indicate that appearance of unlawful command influence is no longer sufficient to violate the statute. But even applying the appearance of UCI

---

[19] Of note, in *Gilmet*, the government challenged the military judge's remedy of dismissal with prejudice for the first time at oral argument before the CAAF. *Gilmet*, 83 M.J. at 408 ("There may be merit to this argument, but the trouble for the Government is that it never raised it before doing so before this Court.")

standard here, the government's actions did not create "an intolerable strain upon the public's perception of the military justice system" and "an objective, disinterested observer, *fully informed of all the facts and circumstances*, would not harbor a significant doubt about the fairness of the proceeding." *Horne*, 82 M.J. at 286-87 (cleaned up).

Because any such error in this case is harmless, we find the military judge abused his discretion in dismissing the case with prejudice.

## CONCLUSION

For the reasons discussed above, the appeal of the United States pursuant to Article 62, UCMJ, is GRANTED and the decision of the military judge is therefore SET ASIDE. We return the record of trial to the military judge for action consistent with this opinion.

Judge POND and Judge PARKER concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court